IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JODY JOHNSON et al.,

    Plaintiffs,

vs.                                No. CIV 99-348 MV/WWD

CITY OF HOBBS, et al.

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary and Permanent Injunction filed June 2, 1999 **[Doc. No. 10]**. Defendants had notice of this Motion and filed a response. The Court, having reviewed the moving papers, finds that a hearing is not necessary on Plaintiffs' Motion. Further, having considered the motion, response, reply, additional submissions requested by the Court, and being otherwise fully informed, the Court finds that motion is partially well-taken and will be **GRANTED, in part**.

### **FACTUAL BACKGROUND**

Plaintiffs filed suit alleging Defendants City of Hobbs, Police Chief Tony Knott, former Police Chief William Morrill and other individual officers violated their constitutional rights by

repeated and systematic unlawful searches, seizures and malicious prosecution and that they have been subjected to disparately harsh law enforcement practices because of their race.  On May 6, 1999, Plaintiffs filed an Amended Class Action Complaint adding named Plaintiffs and a class action claim on behalf of all African-American residents of Hobbs.  Plaintiffs seek injunctive relief for the class and damages and injunctive relief for the named Plaintiffs.

One of the newly named Plaintiffs is Rosslee Mackey.   The Amended Class Action Complaint alleges that Rosslee Mackey's constitutional rights were violated, in part, because of his association with and support of his son, Carl Mackey (hereinafter "Mackey"). Mackey has made repeated complaints of police misconduct and has assisted numerous African-American citizens, including some of the named Plaintiffs, in filing police misconduct complaints.  In addition, Mackey has openly assisted the named Plaintiffs in pursuing this civil rights litigation. For example, Mackey made a Public Records request to the Hobbs Police Department on behalf of four named Plaintiffs on May 1, 1999.  Finally, Mackey is a member of the class named in the Amended Class Action Complaint because he is an African-American citizen of Hobbs.

The facts of the incident at issue in Plaintiffs' Motion reveal that on May 14, 1999, Hobbs Police Chief Tony Knott received seven phone calls recorded on his caller ID as having been calls from Carl Mackey between 3:30 pm and 8:30 pm.  On May 16, 1999, Knott's caller ID recorded another phone call identified as being from Mackey.  Knott claims that the calls were hang ups, although he lacks personal knowledge on the issue since he was not home when the calls were made and he was told about the hang ups from his children.

When Knott learned of the calls, he asked an officer to come to his home.  Officer Laura Wall came to Knott's house and saw the caller ID box showing the calls recorded as coming from

Mackey. Knott told Wall that he wanted to make a police report due to the calls being harassing. Wall's supervisor, Sergeant Mark Rhoads, arrived shortly thereafter. Knott gave Wall the caller ID box and told Wall he could show it to Mackey when Wall questioned him. The officers then went to Mackey's house to talk to him.

Mackey spoke to the officers at his home and told them that he had not made any calls to Knott's house. The officers told Mackey that they were investigating unlawful use of a telephone. When the officers left, Mackey asked his children whether they had made any calls in the past week to any strangers. His children had been looking for apartments to rent and had called several ads listed in the Hobbs newspaper that week. One of the ads had no name attached to the number, and it turned out that Knott was renting apartments and had listed his phone number without his name in one of the ads. Mackey's children had called the number. Because there was no answer or a child had answered and either hung up or told them to call back, they had called the number at least seven times.

There is no evidence in the record suggesting that Knott told either of the officers about his ad in the paper.

Mackey feared that this investigation was started in retaliation for his criticism of the Hobbs Police Department and his participation in this suit. He also feared that the investigation would be used to obtain a warrant to tap his phone or to otherwise monitor his calls. He spoke to Plaintiffs' counsel, and on May 18, 1999, Plaintiffs' counsel called Defense counsel to explain what had happened, to ask whether the number listed in the ad was in fact Knott's number and to ask the status of the investigation. While Defense counsel did confirm that the number in the ad was Knott's number, he did not tell Plaintiffs' counsel the status of the investigation.

In the wake of Defense counsel's silence on these issues, Plaintiffs filed this motion requesting an order: 1) to terminate the investigation of Mackey; 2) to expunge from their computerized records any references to this investigation; and 3) to prohibit Defendants from conducting any investigation, surveillance or detention of any named Plaintiff or Mackey unless Defendants have at least a reasonable suspicion to believe that any of these individuals have committed or are about to commit a crime. Defendants oppose this motion, arguing that Mackey lacks standing, the Court lacks authority to rule on Mackey's claim and the Plaintiffs have failed to prove that any relief is warranted. They also stated for the first time that there is no ongoing investigation of Mackey for any reason.

After reading the parties' initial submissions, the Court requested information from Defendants about computerized files maintained by the Hobbs Police Department and information concerning the investigation of Mackey. These submissions reveal that Hobbs Police Department Detective Ted Fuller was assigned to follow up on Wall and Rhoads' report. Fuller requested a search warrant for Mackey's telephone records. The first judge Fuller approached had a potential conflict of interest with Mackey, and the second judge he approached refused to issue the warrant. Fuller advised his supervisors of the Judge's decision, and "was advised to suspend the case." (Affidavit of Ted Fuller, ¶ 4.) Fuller does not identify who he advised or who told him to "suspend" the case. While Fuller states that "no further activity has been conducted" and that he "consider[s] this matter closed," (*id.*, ¶ 5), Defendants have not submitted any evidence that this investigation has, in fact, been terminated.

4

**LEGAL STANDARD**

A party seeking a preliminary injunction must demonstrate: "(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest." *Longstreth v. Maynard*, 961 F.2d 895, 902 (10th Cir. 1992).[1] Where the movant can satisfy the second, third and fourth factors of this test, the first factor is "relaxed to require only that the movant raise 'questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry.'" *Id.* at 903 (citation omitted). To the extent that they differ, the relevant merits for purposes of the first factor are the merits of the claim for which plaintiff seeks a preliminary injunction rather than the merits of the claims raised in the Complaint. *Anderson v. Davila*, 125 F.3d 148, 159 n.10 (3d Cir. 1997).

**DISCUSSION**

**I. CARL MACKEY'S STANDING TO ASSERT THIS RETALIATION CLAIM.**

Defendants contend that Carl Mackey lacks standing to assert his claim because he has no constitutionally protected right for "lawyering on behalf of plaintiffs" and because he has not pled his retaliation claim in the Complaint. However, the Tenth Circuit has made it clear that "[t]he right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution." *Smith v. Maschner*, 899

---

[1] Although the Plaintiffs have requested an injunction involving a state criminal investigation, the Court notes that the *Younger* abstention analysis does not apply because criminal proceedings are not pending. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930-31 (1975).

F.2d 940, 947 (10th Cir. 1990)(citation omitted). This right is one of the privileges and immunities accorded citizens under Article 4 of the Constitution and the Fourteenth Amendment, as well as one aspect of the right to petition the government for redress of grievances guaranteed by the First Amendment. *Id.*

Encompassed within the right of access to the courts is the right to assist others in litigation vindicating civil rights. *NAACP v. Buttons*, 371 U.S.415, 420 (1961) (assisting in civil rights litigation is a protected mode of expression and association under the First and Fourteenth Amendments)*; Smith*, 899 F.2d at 950; *Owens v. Rush*, 654 F.2d 1370, 1379 and n.11 (10th Cir. 1981). In *Owens*, the plaintiff claimed that he had been fired from the Sheriff's Department in retaliation for his efforts to assist his wife in pursuing a civil rights claim against the Department. The Tenth Circuit found that plaintiff had sufficiently alleged that the decision to discharge him from his position as Undersheriff was "an infringement of his constitutionally protected rights to assist his wife and to be free from unconstitutional retaliation for doing so." *Owen*, 654 F.2d at 1379 n.11.

Similarly, in *Smith*, the Tenth Circuit found that a prisoner's claim for retaliation against prison officials for his work in assisting other prisoners in a class action sufficiently alleged a constitutional violation. "A properly stated first amendment claim . . . does not fail simply because the allegedly protected activities were conducted on behalf of others." *Smith*, 899 F.2d at 950. Mackey has alleged that certain Defendants are investigating him in retaliation for his assistance in this civil rights litigation. Like the plaintiffs in *Smith* and *Owen*, he has standing to bring this claim, and his allegations sufficiently state a claim for a violation of his First Amendment rights.

In addition, Mackey alleges that certain Defendants are pursuing a criminal investigation of him to deter him and other witnesses from testifying in this action. A witness has standing to sue under 42 U.S.C. § 1985(2), which creates a cause of action against those who "conspire to deter, by force, intimidation, or threat, any party or witness" from attending or testifying in federal court. *Brever v. Rockwell International Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (quoting 42 U.S.C. § 1985(2)) . The protections provided by § 1985(2) extend to someone whom a party intends to call as a witness. *Id.* at 1128 n.11. Plaintiffs state in their Memorandum that they intend to call Mackey as a witness. The allegations in the Complaint alleging that certain Defendants retaliated against Rosslee Mackey because of his association with his son support Plaintiffs' statement. Mackey, then, has standing to assert a claim pursuant to § 1985(2).

In addition to these substantive arguments, Defendants claim that Mackey lacks standing because his claims of retaliation and deterrence are not included in the Complaint. It is a close call, but the Court finds that Mackey's request for relief alleges the kind of harassment and other misconduct alleged in paragraph 95 of the Amended Class Action Complaint. Mackey's claim here is similar to the claim pled by his father Rosslee Mackey alleging that Defendants retaliated against him due to his association with people like Carl Mackey who have been vocal in their criticism of the Defendants. (Amended Class Action Complaint, ¶¶ 68-82.) While the specific facts alleged in Plaintiffs' Memorandum are not included in the Amended Class Action Complaint, the Court finds that the Complaint gives Defendants fair notice that claims of instituting an investigation to retaliate against a suit seeking vindication of potential class members' civil rights are included. *See* Fed.R.Civ.Proc. 8(f) ("all pleadings shall be so construed as to do substantial justice").

Even if Mackey's claims are not alleged in the Complaint, the Court believes that the issues raised are sufficiently important that they demand resolution on the merits. In *Yniguez v. Mofford*, 130 F.R.D. 410 (D. Ariz. 1990), *aff'd in part, rev'd in part*, 939 F.2d 727 (9th Cir. 1991), potential intervenors had failed to satisfy Rule 24(c)'s requirement that their motion to intervene be accompanied by a pleading setting forth the claim or defense for which intervention was sought. The Court noted the deficiency, and the case law holding that failing to file the requisite pleading was fatal to a motion to intervene, but went on to consider the standing issues raised by the motion because of the importance of the issue. *Id.* at 413. The Ninth Circuit and ultimately the Supreme Court also considered the standing issue despite this pleading deficiency. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 57-80 (1997) (noting the District Court's discussion of pleading deficiency, discussing subsequent history of case and determining standing of intervenors). Like the *Yniguez* Court, this Court finds that Mackey's claims of retaliation for assisting others to vindicate their civil rights and of deterring potential witnesses are important enough that it will address the merits of these claims.

Moreover, the Court notes that had the Plaintiffs requested leave to amend to add these allegations to the Amended Class Action Complaint, leave would likely have been granted since Defendants have only recently answered the current Complaint and discovery is still in the beginning stages, if it has begun at all. *See* Fed.R.Civ.Proc. 15 (leave to amend must be "freely given").

The Plaintiffs could move to amend the Complaint to add these allegations. However, because of the serious nature of Mackey's claims, the need for prompt resolution and the policies favoring class action suits discussed below, the Court finds that it can adjudicate this issue

8

without requiring formal amendment to the Complaint.

## II. THE COURT'S AUTHORITY TO ENTER THE REQUESTED INJUNCTION.

The Supreme Court has recognized that while class actions serve an important function in our system of civil justice, they also present opportunities for abuse. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* This discretion is bound by the relevant provisions of the Federal Rules. *Id.*

Rule 23(d) provides that the Court may make "appropriate orders" concerning the course of proceedings, notice, amendments and "similar procedural matters." *See* Fed.R.Civ.Proc. 23(d)(1) - 23(d)(5). Pursuant to this Rule, the Court may issue orders limiting communications between defendants and potential class members that have the potential effect of influencing the decision whether to participate in the suit. *Gulf Oil*, 452 U.S. at 101-2 (holding that such orders are proper when based on an appropriate record, but finding that order in this case was not appropriate); *In re Asbestos Litigation*, 842 F.2d 671, 682 n.23 (3d Cir. 1988); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980). The Court may issue such orders before a class has been certified because a defendant who attempts to influence the decision of a potential class member not to join the suit undermines the purposes of Rule 23 in the same way as a defendant who attempts to convince class members to opt out of an already-certified class. *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997); *Hampton Hardware, Inc. v. Cotter & Company, Inc.*, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994).

The Court has not found any cases in which plaintiffs asked to enjoin a defendant's actions

that were intended to deter potential class members from participating in a suit as opposed to a defendant's words that were intended to have this effect. However, the Court believes that the principles underlying both types of suit are the same. "Rule 23 specifically empowers district courts to issue orders to prevent abuse of the class action process." *In re School Asbestos Litigation*, 842 F.2d at 680. Courts can issue orders limiting defendant's communications with potential class members because "[m]isleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *Id.* The same is true for the pursuit of criminal investigations in retaliation for assisting in filing suit and to deter potential witnesses from testifying in the action. Pursuant to Rule 23(d), the Court has the authority to enter an order enjoining conduct as well as words that have the intent and/or the effect of undermining the purposes of the class action procedure. Since Mackey alleges that certain Defendants' actions have had this effect, the Court will consider the merits of his claim.

**III. THE PRELIMINARY INJUNCTION ANALYSIS.**

**A. Irreparable Injury.**

The Tenth Circuit has held that "[t]o the extent that First Amendment rights are infringed, irreparable injury is presumed." *Community Communications Co., Inc. v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As the Eleventh Circuit has recognized, "[o]ne reason for such stringent protection of First Amendment rights certainly is the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Cate v. Oldham*, 707 F.2d 1176, 1189

(1983). Retaliation in response to assisting those pursuing a civil rights action presents precisely this fear, and this element of the preliminary injunction test is satisfied.

Defendants contend that Plaintiffs have failed to show irreparable harm because the investigation has ended. While the Court agrees that an injunction will not issue absent "some cognizable danger of recurrent violation," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), the Court cannot find from the submissions of Defendants that the investigation has been terminated. While Knott states that "there is no continuing investigation of Carl Mackey for any reason," (Affidavit of Tony Knott, ¶ 7), the detective assigned to follow up on the police report states that he was "advised to suspend the case," (Affidavit of Ted Fuller, ¶ 4), and that he "consider[s] this matter closed," (*id.*, ¶ 5). The Court cannot find that the case has been terminated based on these statements, especially in light of Defendants failure to inform the Court in their original submission of the efforts to obtain a search warrant. Since anything other than a closed, terminated investigation raises the potential chill to Plaintiffs' First Amendment rights, the irreparable harm factor is met.

### B. Balance of Threatened Injury to Each Party and Showing that Injunction Is In the Public Interest.

Both of these factors weigh in favor of enjoining the investigation. The potential harm that Mackey, named Plaintiffs or other residents with knowledge of the claims alleged in the Amended Class Action Complaint will be deterred from assisting the Plaintiffs far outweighs any harm to the Hobbs Police Department in stopping an investigation of lawful activity. Similarly, protecting the rights of citizens to pursue civil rights actions by stopping any retaliation for doing so promotes the public interest.

### C. Likelihood of Success on the Merits.

Mackey has alleged retaliation in violation of his First Amendment rights. In *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), the Supreme Court held that an individual has a viable claim against the government when she is able to prove that the government acted against her in retaliation for her exercise of First Amendment rights. Although *Mt. Healthy* concerns dismissal, many courts have expanded its doctrine to different types of official retaliation. *See e.g. Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996) (decision to prosecute in retaliation for protected speech or expression violates First Amendment and is actionable under 42 U.S.C. § 1983); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997) (collecting cases).

To prevail in a retaliation claim, Mackey must prove: (1) that he engaged in protected activity; (2) that the Hobbs Police Department responded with retaliation; and (3) that his protected activity was the cause of the retaliation. *Anderson*, 125 F.3d at 161; *see also Wolford*, 78 F.3d at 488 (in case alleging prosecution in retaliation for the exercise of First Amendment rights, plaintiffs must show that retaliation was the cause of the threatened prosecution and the accompanying injuries to plaintiff).

Here, as set forth above, Mackey's actions in assisting Plaintiffs in their suit are protected by the First Amendment. The Court next turns to retaliation. The Court finds that Knott and the officers had a good faith basis for looking into the potential violation of N.M. Stat. Ann. § 30-20-12 (Michie 1994).[2] Mackey admits that his children placed seven calls to Knott's house within a

---

² This statute provides, in relevant part, "It shall also be unlawful for any person . . . to otherwise disturb by repeated anonymous phone calls the peace, quiet or right of privacy of any other person at the place where the telephone call or calls were received, or to maliciously make a

very short period of time.  Given the history of animus between Knott and Mackey documented by Plaintiffs in their submission, the Court finds that Knott's decision to talk to an officer about the calls and to have the officers go talk to Mackey was an appropriate response to the calls. Mackey does not allege any improper actions by these officers in questioning him about the calls. While Plaintiffs claim some deception or improper purpose in Knott's failure to tell the officers about his ad in the paper, the Court rejects any such inference since there is no reason to believe that the officers would have responded any differently had they known this fact.  There is no evidence that Knott had any reason to believe that the calls related to his ad.

However, once Mackey realized that the calls related to Knott's ad for an apartment and his counsel informed defense counsel of this fact, Fuller lacked any reason to continue the investigation.  *See State v. Stephens*, 111 N.M. 543, 546 (Ct. App. 1991) ("When a caller has a legitimate purpose and the call communicates that purpose, only in an extreme circumstance is the call inexcusable.")  It is axiomatic that "each party is considered to have notice of all facts, notice of which can be charged on the attorney."  *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1961). Thus, Knott, Fuller's boss, is deemed to have notice of the reason for the phone calls on or about May 18, 1999.

While Defendants' submission does not identify exactly when Fuller sought the search warrants, the Court finds that his investigation continued after May 18, 1999.  Fuller states that no action was taken after May 24, 1999.  (Affidavit of Ted Fuller, ¶ 5.)  The Court infers from this statement that actions were taken up until that date.

---

telephone call, whether or not conversation ensues, with intent to annoy or disturb another . . . ." N.M. Stat. Ann. § 30-20-12.

That Defendants continued the investigation, so soon after Plaintiffs' filed their Amended Class Action Complaint and without any reasonable basis for believing Mackey or anyone in his household had made the calls to disturb Knott's peace and quiet or with the intent to harass or annoy as required by NMSA § 30-20-12, leads the Court to conclude that the Defendants' actions had no purpose other than retaliation. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (finding that an adverse action that occurred less than two months after engaging in protected activity, along with knowledge that the plaintiff had engaged in that activity sufficient to withstand summary judgment). That the judge in Hobbs denied the Department's application of a search warrant is further evidence that the investigation lacked any legitimate purpose.

The Court finds that as to retaliation and whether Mackey's protected activity was the cause of the retaliation, Plaintiffs have raised "questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *Longstreth*, 961 F.2d at 903.[3] Plaintiffs have therefore satisfied all four factors required for injunctive relief.

## IV. REQUESTED RELIEF.

Plaintiffs ask the Court for three-part relief. First, Mackey asks that the Court enjoin the investigation based on unlawful use of the telephone. The Court grants this request in light of the analysis set forth above.

However, the Court cannot grant the other two parts of Plaintiffs' requested injunctive

---

[3] Because Plaintiffs base their claim of deterrence and intimidation pursuant to 42 U.S.C. § 1985(2) on the same facts and request the same relief, the Court will not consider the merits of this claim.

14

relief. Plaintiffs ask the Court to order Defendants to expunge all references to this investigation from their computerized records and displays. Defendants have shown that the computer system identifies all contacts with citizens resulting in a report, dispatch or an interview. Since the officers filed a police report reflecting Knott's complaint and their conversation with Mackey, and the Court has not found anything improper about these activities, the Court finds no basis for ordering the records expunged. While the Court is troubled by Knott's improper use of these records on a previous occasion, the Court also recognizes that he was criticized for his actions by the New Mexico Supreme Court. The Court finds that Plaintiffs' assertion that Knott will attempt to use the computerized record of this investigation improperly is speculative and does not provide sufficient support for Plaintiffs' request that the records be expunged.

Finally, Plaintiffs have requested that the Court enter an order prohibiting Defendants from conducting any investigation, surveillance or detention of any named Plaintiff or of Mackey unless Defendants have at least a reasonable suspicion to believe that any of these individuals have committed or are about to commit a crime. The Court sees this as an attempt to have the Court decree that Defendants should do their jobs. Rather than issue this type of unenforceable decree, the Court directs Defense counsel to show this Memorandum Opinion and Order to each of the Defendants. The Court takes any allegations of harassment, intimidation or retaliation seriously, and expects counsel for both sides to treat them that way as well. Since the parties can expect the Court to give prompt and careful consideration to any allegations of improper actions by either side, no such injunction is required.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Temporary Restraining

Order and/or Preliminary and Permanent Injunction filed June 2, 1999 **[Doc. No. 10]** is **GRANTED, in part**. Defendants are ordered to terminate the investigation of Carl Mackey based on unlawful use of a telephone. In all other respects, Plaintiffs' Motion is denied.

**IT IS SO ORDERED.**

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiff:
  Richard Rosenstock
  Daniel Yohalem
  Debra Poulin

Attorneys for Defendants:
  Gregory L. Biehler