EXHIBIT

*A*

## NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION

PLEASE TAKE NOTICE that the parties to the class action entitled *Jody Johnson, et al., v. City of Hobbs, et al.*, in the United States District Court for the District of New Mexico, case no. CIV 99-00348 MV/WWD-ACE, intend to settle the case as to all members of the class of all African-American residents of Hobbs, New Mexico. On March 29, 1999, seven African-American residents of Hobbs, New Mexico filed a class action on behalf of all African-American residents of Hobbs against the City of Hobbs Police Department and various named police officers claiming that the Hobbs Police Department (HPD) had violated their Constitutional rights to be free from unreasonable and excessive searches, arrests and uses of force. Defendants denied these claims. The parties have now agreed upon and strongly support the **Stipulated Agreement** by which the parties wish to settle all the claims of the class of all African-American residents of Hobbs. The **Stipulated Agreement** provides for injunctive remedial relief only. The class did not seek and will not receive monetary damages.

Copies of the **Stipulated Agreement**, which sets forth the settlement that applies to the class, and an **Explanation of the Stipulated Agreement** are available now for review at each of the following locations in Hobbs: the City Hall (ask for Jan Fletcher, the City Clerk) and the Public Library (ask for Chris Adams), as well as the churches in Hobbs (as of May 13) whose congregations are predominantly comprised of African American residents or mixed Hispanic and African-American residents.

**United State District Judge Martha Vazquez has scheduled a hearing on June 8, 2001 at 1:30 p.m. in the Federal Courthouse in Santa Fe, New Mexico to determine whether to approve this proposed settlement of the class action. Anyone who wishes to** object **to the approval of the proposed Stipulated Agreement should attend this hearing on June 8 in Santa Fe and** must notify **any one of the attorneys for the parties in writing no later than by** June 4, 2001 **stating their intention to appear at the hearing and briefly state why they object to the Court's approval of the Stipulated Agreement. The addresses of the attorneys are set forth at the end of the Stipulated Agreement.**



EXHIBIT

*B*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JODY JOHNSON, JESSICA HECKARD,
a minor, and JUSTIN HECKARD, a minor,
by and through JODY JOHNSON, their mother
and next friend, LAMOND ALEXANDER,
RAYMOND MCGAHA, ROBERT WARD,
and ROSSLEE MACKEY, SR., on behalf of themselves
and all persons similarly situated,

       Plaintiffs,

vs.                                   NO. CIV 99-00348 MV/WWD-ACE

CITY OF HOBBS, a municipality, WILLIAM
MORRILL, TONY KNOTT, DANNY CARTER,
JAMES MURPHY, D.L. KELLEY, MARK RHOADS,
MATT RHOADS, SEAN BATES, MARK CONGER,
BOB COOLEY, MARK HERRERA, CHRIS LYLE,
KENNETH RAGLAND, MARK FRITTS, PETE FARMER,
ROBERT WATTS, ROBERT WEAVER, DON GRAHAM,
MICHAEL MANN, LAURA WALL, JEFF WORTH,
ORIN TUBBS, DUSTY WILSON, GEORGE RIVERA,
COREY HELTON, STAN DURHAM, MICHAEL RICHARDSON,
RANDY PELL, DAVID LESTER, PAUL J. CAMPOS,
STEVEN DARRIK LASATER, Individually and in their official capacities,

       Defendants.

## EXPLANATION OF PROPOSED SETTLEMENT OF CLASS ACTION CLAIMS

      On March 29, 1999, seven African-American residents of Hobbs, New Mexico filed

a class action on behalf of all African-American residents of Hobbs against the City of

Hobbs Police Department and various named police officers claiming that the Hobbs Police

Department (HPD) had violated their Constitutional rights to be free from unreasonable and

excessive searches, arrests and uses of force.  Defendants denied these claims.  After

many months of investigation and depositions, the parties (Plaintiffs and Defendants) to this lawsuit decided to hire an independent expert to review the citizens' complaints and the policies and practices of the HPD.  This expert, Charles Reynolds, former head of the International Association of Chiefs of Police, met with all the parties, reviewed relevant documents and wrote a report suggesting a possible basis for settling the lawsuit as to the class claims.

Plaintiffs and Defendants in this case have now reached a settlement of all claims, both as to the individually named Plaintiffs and as to the class of all  African-American residents of Hobbs, New Mexico.  The parties have agreed upon and strongly support the **Stipulated Agreement** by which the parties wish to settle all the claims of the class of all African-American residents of Hobbs.  The **Stipulated Agreement** provides for injunctive remedial relief only.  The class did not seek and will not receive monetary damages.

Under Federal Law (Rule 23(e) of the Federal Rules of Civil Procedure), a class action may not be settled without the approval of the Court and notice of the proposed settlement to the members of the class.  Copies of the **Stipulated Agreement**, which sets forth the settlement that applies to the class, are available now for review at each of the following locations in Hobbs: the City Hall (ask for Jan Fletcher, the City Clerk) and the Public Library (ask for Chris Adams), as well as the churches in Hobbs whose congregations are predominantly comprised of African American residents or mixed Hispanic and African-American residents.  A Notice to Class Members will be prominently published daily in the Hobbs News Sun, every day (Tuesday through Sunday) from May 9 through May 27, 2001 (a total of 17 days).

**United State District Judge Martha Vazquez has scheduled a hearing on June 8, 2001 at 10:00 a.m. in the Federal Courthouse in Santa Fe, New Mexico to determine whether to approve this proposed settlement of the class action. Anyone who wishes to <u>object</u> to the approval of the proposed Stipulated Agreement should attend this hearing on June 8 in Santa Fe and <u>must notify</u> any one of the attorneys for the parties in writing no later than by <u>June 4, 2001</u> stating their intention to appear at the hearing and briefly state why they object to the Court's approval of the Stipulated Agreement. The addresses of the attorneys are set forth at the end of this Explanation.**

A very general description of the **Stipulated Agreement** follows. This is a **very** brief summary. The **Stipulated Agreement**, itself, should be reviewed in its **entirety** to see the full extent and language of the areas covered by it.

II.  CLASS CERTIFICATION - certifies that all the legal requirements have been met for this case to proceed as a class action as to the injunctive remedial relief sought in the case, with the class being defined as all African-American residents of Hobbs, New Mexico.

III.  EMPLOYMENT - HPD will evaluate its work environment as it relates to minorities, not tolerate racially derogatory comments, and develop an affirmative action plan for recruitment and hiring of minorities.

IV.  CRIME CONTROL STRATEGIES - HPD will revise policies regarding identification of Career Criminals and require reasonable suspicion or probable cause for detentions and in implementing the COMSTAT statistics-

based law enforcement program.

V.     USES OF FORCE - HPD will continue and expand its required reports, analysis of data, investigations and remedial actions for possible violations of HPD policy regarding use of force by officers.

VI.    DETENTIONS, SEARCHES, AND SEIZURES -  HPD will continue and expand its required reports, analysis of data, investigation of possible violations regarding stops, detentions, arrests and searches, and take remedial steps to ensure appropriate methods are used.

VII.   REVIEW OF CERTAIN ARRESTS OR CHARGES - HPD will adopt standards for, more extensive reporting on and review of certain listed arrests (as well as detention for detoxification) by HPD officers and take prompt remedial steps to ensure that appropriate practices are used.

VIII.  CITIZEN COMPLAINTS AND INTERNAL AFFAIRS - HPD will modify its citizen complaint process to make it more convenient and thorough and change its internal affairs investigative process to provide a convenient, thorough and independent review of all serious complaints.

IX.    TRAINING - HPD will continue to train its officers at least 40 hours per year and periodically review that training to ensure that HPD officers are well-trained in the use of appropriate procedures concerning detentions, searches, and arrests (especially arrests for: resisting, evading and/or obstructing a police officer; assault on an officer; possession of contraband or other illegal items (e.g., controlled substances, drug paraphernalia, weapons, etc.) discovered in warrantless searches not conducted pursuant

4

to arrests for other offenses; disorderly conduct; insurance required; concealing identity; public intoxication).

There is to be a special emphasis in training on: 1) *Cultural Diversity* ( racial profiling, racial targeting, police interactions with persons from different racial, ethnic, and religious groups, and persons of the opposite sex, and communications skills to avoid improper racial, ethnic, and sexual communications); 2) *Use of Force* (verbal de-escalation techniques as an alternative to the use of force and other tactics for avoidance of confrontation (such as situations that do not require the use of force but may be mishandled, resulting in force being used); and 3) *Integrity and Ethics* (truthfulness, professionalism, reporting misconduct by fellow officers, avoiding misconduct and cooperating in misconduct investigations).

X.     INFORMATION SYSTEM - HPD senior officers will conduct systematic analyses on a quarterly basis of officer conduct to eliminate potential racial bias.  HPD will review: 1) statistics by race in uses of force, field contacts, other detentions, searches and seizures, and citizen's complaints,  2) the use of racial epithets and 3) other indicators of possible racial bias, with referrals to Internal Affairs, as appropriate.

XI.    IMPLEMENTATION -  Clarence Chapman, current Chief of the UCLA Police Department will serve as the independent monitor/mediator on a part-time basis for a period of three years to review the statistical data and other reports prepared by HPD, as well as citizen complaints and other issues brought to his attention.   He will report periodically on the progress of

implementing the **Stipulated Agreement**.   He is authorized to make recommendations and mediate any dispute regarding the Stipulated Agreement.

XII.   INJUNCTIVE RELIEF FOR THE NAMED PLAINTIFFS - requires specific protections for the seven named Plaintiffs in this lawsuit.

## NOTICE OF INTENTION TO APPEAR AT HEARING TO OBJECT

To notify the parties and the Court of the intention to appear at the June 8, 2001 hearing to **object** to the Court's approval of the **Stipulated Agreement** (appearance is **not** necessary for those who approve), people **must** notify any one of the following attorneys **in writing** by June 4, 2001, stating the intention to appear and a brief statement of the objection.  Anyone with questions about the **Stipulated Agreement** may contact any of the attorneys.  Please do **not** contact the Court (Judge Vazquez) with questions.

Richard Rosenstock
PO Box 10230
Santa Fe, NM 87504-6230
(505) 988-5324   FAX (505) 989-484

Daniel Yohalem
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 983-9433  FAX (505) 989-4844

Debra Poulin
612 Old Santa Fe Trail
Santa Fe, NM 87501
(505) 995-0360

Attorneys for Plaintiffs

Gregory L. Biehler
6715 Academy Rd. NE
Albuquerque, NM 87109
828-3600   FAX 828-3900

Attorney for Defendants



EXHIBIT

C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JODY JOHNSON, JESSICA HECKARD,
a minor, and JUSTIN HECKARD, a minor,
by and through JODY JOHNSON, their mother
and next friend, LAMOND ALEXANDER,
RAYMOND MCGAHA, ROBERT WARD,
and ROSSLEE MACKEY, SR., on behalf of themselves
and all persons similarly situated,

        Plaintiffs,

vs.                              NO. CIV 99-00348 MV/WWD-ACE

CITY OF HOBBS, a municipality, WILLIAM
MORRILL, TONY KNOTT, DANNY CARTER,
JAMES MURPHY, D.L. KELLEY, MARK RHOADS,
MATT RHOADS, SEAN BATES, MARK CONGER,
BOB COOLEY, MARK HERRERA, CHRIS LYLE,
KENNETH RAGLAND, MARK FRITTS, PETE FARMER,
ROBERT WATTS, ROBERT WEAVER, DON GRAHAM,
MICHAEL MANN, LAURA WALL, JEFF WORTH,
ORIN TUBBS, DUSTY WILSON, GEORGE RIVERA,
COREY HELTON, STAN DURHAM, MICHAEL RICHARDSON,
RANDY PELL, DAVID LESTER, PAUL J. CAMPOS,
STEVEN DARRIK LASATER, Individually and in their official capacities,

        Defendants.

## STIPULATED AGREEMENT RESOLVING ALL CLASS AND INDIVIDUAL
## CLAIMS FOR INJUNCTIVE RELIEF

## I.    INTRODUCTION

Whereas in order to avoid the expense and uncertainty of continued litigation and

to begin to build a bridge between the minority communities residing in Hobbs and the City

of Hobbs (hereinafter "HPD"), the parties to this litigation wish to resolve the class action

and injunctive aspects of this case,

Whereas the HPD wants to demonstrate further its commitment to racial equality and nondiscrimination in all HPD activities,

NOW THEREFORE come the Plaintiffs and the Defendants in this action, in a spirit of cooperation and reconciliation, and hereby agree to the entry of this Stipulated Agreement Resolving All Class and Individual Claims for Injunctive Relief.


## II.    CLASS CERTIFICATION

The Plaintiffs in this case represent the class of all African-American residents of Hobbs, New Mexico.  All the requirements for a class under Rule 23 (a) and (b)(2) of the Federal Rules of Civil Procedure have been satisfied and this action is properly certified as a class action solely for purposes of the requested injunctive relief. The class is defined as all African-American residents of Hobbs, New Mexico.  There are more than 2,000 members of the class and it is so numerous that joinder of all members is impracticable. There are questions of law and fact common to the class, the claims of the named Plaintiffs are typical of the claims of the class, and the named Plaintiffs will fairly and adequately protect the interests of the class.  Defendants have agreed to the injunctive relief set forth in this Order.


## III.    EMPLOYMENT

A.    HPD will immediately evaluate the working environment as it relates to minority employees, particularly members of the class, and take all steps necessary (including, but not limited to, changes in policies and procedures

and memos to employees) to communicate and continue to communicate to its employees that the HPD does not tolerate racially derogatory remarks and/or conduct by employees.  These steps include, but are not limited to, changes in policies and procedures and memos to employees, and the immediate application of the maximum discipline allowed for such conduct under HPD policies against anyone found to have made such remarks and/or participated in such conduct under color of law, in any way that reflects negatively on the HPD or in violation of any HPD rule, policy or regulation.

B.     Within one month the HPD will prepare an affirmative action plan to establish measurable objectives for the increased recruitment and hiring of minority officers and to include in its plan appropriate changes in the working environment to encourage minority employees to join and remain on the force.

## IV.     CRIME CONTROL STRATEGIES

A.     Within two months the HPD will revise its policy concerning "career criminals."  The revisions will include:

1.     A revised definition of "career criminal" that includes only those persons who have been convicted of two or more violent felonies or three or more non-violent felonies within a ten-year period.

2.     Procedures for identifying and placing individuals on the career criminal list.

3.     Procedures and criteria for removal of individuals from the career

3

criminal list if there have been no felony convictions or arrests within two years from the date of their last felony conviction and they were placed on the list.

4. Procedures, to be based on the applicable International Association of Chiefs of Police (hereinafter "IACP") policies, to be followed by officers when contacting career criminals.

5. Reports to be completed by officers when making contact with known career criminals.

B. The HPD will take steps sufficient to ensure that its COMSTAT program is being implemented in such a way as to require the presence of reasonable suspicion or probable cause for every detention, including those that occur late at night.

## V. USES OF FORCE

Within one month the HPD will modify its policies, procedures and forms regarding reports on the use of force as follows:

A. All officers will be required to complete a written "use of force" section contained within the police report each time:

1. Any type of force is used against an individual by an officer acting under color of law.

2. A firearm is discharged by an officer, except at a firing range or destroying an animal.

3. A person in custody receives a serious injury or has received a

4

serious injury while being taken into custody (except for jail injuries, which shall be by separate report); and any officer is injured in the line of duty.

B.    Types of force to be reported will include, but not be limited to:

1.    Joint locks,

2.    Mechanical restraints,

3.    Pressure points,

4.    Chokes or choke holds,

5.    Takedowns, throws,

6.    Striking weapons,

7.    Kicks or strikes with open or closed hands or with tools or implements of the trade (e.g., flashlights, metal clipboards, etc.).

8.    Chemical weapons, electrical weapons, and lethal weapons (*including drawing of a gun and pointing it at a person*).

C.    Exceptions to the report requirement are limited to incidents where the force used was only a firm grip and/or use of handcuffs.  When force is used to effectuate a handcuffing, however, a report is required.

D.    Each use of force section of the police report will include, at a minimum, the following information: case number, officer's name, description of incident; the reason(s) why force was used; each specific type of force used; the effectiveness of each type of force used; description of any injuries to either a citizen or officer, and medical/hospital data; name, race and gender of the person against whom force was used; names and contact information for all

5

witnesses when possible; whether the individual against whom force was used was arrested or cited, and if so, the charges; date, time, and location of the incident; and the signatures of the officer and his immediate supervisor.

E.      Each police report, including the use of force section of the report, will be reviewed, along with any associated arrest report, by the reporting officer's immediate supervisor within 24 hours of the use of force and expeditiously through the chain of command.  Whenever the supervisor believes there may have been an inappropriate use of force, the supervisor shall provide his/her superiors with a written explanation as to why the use of force was inappropriate.

F.      If a use of force reasonably indicates a possible violation of HPD policy or other inappropriate conduct, the immediate or any other supervisor will refer the matter directly to Internal Affairs for investigation and provide a copy of that referral to the chain of command.

G.      Referrals to Internal Affairs will be automatic and take place immediately anytime there is a firearms discharge (except at the firing range or in the event of putting down an animal).

H.      The HPD will continue its current practice of analyzing and reviewing use of force by all officers.  The Internal Affairs Officer shall be responsible for ensuring that all use of force data from all police reports are regularly and accurately compiled, analyzed and reviewed.  As part of this analysis and review, senior staff will specifically:

6

1.    analyze use of force data on a quarterly, cumulative basis to detect
      trends in department use of force,

2.    have compiled in writing and review use of force incidents by officer
      and by type of force used, and

3.    review these data for the purpose of identifying and acting upon their
      implications for policy and training designed to ensure that officers are
      using only appropriate types and amounts of force.

VI.   **DETENTIONS, SEARCHES, AND SEIZURES**

A.    Within two months HPD will review and revise all its policies and procedures
      with regard to detentions, searches, and seizures to include the following
      standards:

      1.    as to field interviews, pat-down searches, consensual encounters:
            IACP National Law Enforcement Policy Center, Field Interviews and
            Pat Down Searches, Concepts and Issues Paper and Model Policy
            1995; IACP National Law Enforcement Policy Center, Police-Citizen
            Contacts, Concepts and Issues Paper August 2000; and IACP
            Training Key #520, Police Citizen Contacts

      2.    as to the use of confidential informants (as defined in HPD Policies:
            Chapter VII, §8 (A) (2) and (3), in effect on February 2, 2001):  IACP
            National Law Enforcement Policy Center, Confidential Informants,
            Concepts and Issues Paper and Model Policy 1990.

      3.    as to Motor Vehicle Stops:  IACP Policy Review, Volume 12, No. 1,

Professional Traffic Stops, Policy Considerations, Spring/Summer 2000.

B.   Within one month the HPD will modify its policies, procedures and forms regarding reports on field interviews, detentions, searches and seizures as follows:

1.   All officers will be required to complete a written report each time an officer performs a search without a warrant, seizes any property without a warrant (excluding towing vehicles and found or unclaimed property not on a person, in a vehicle or on property otherwise being searched), or conducts an investigative detention based on suspicion of criminal activity (that is, a detention authorized by *Terry v. Ohio*, 392 U.S. 1 (1968)).

2.   This report will include at least: the case # (if applicable); the officer's name; a description of the incident; the specific type of detention, search, or seizure; the reason for the detention, search, or seizure; whether the subject was asked to consent to any search; whether the subject was offered a written consent form to sign and the subject's response to such request; whether the subject granted consent; whether the contact was tape recorded; the name, race, and gender of all persons involved in the detention, search, or seizure; any weapon, evidence, or contraband found; whether the individual involved in the detention, search, or seizure was arrested or cited, and if so, the charges; date, time, and location of the incident.   If a

consent form was signed, it shall be attached to the report and if consent was tape recorded, the tape shall be placed into evidence and maintained for 60 days.

3.    For "*Terry*" detentions, the report will include at least: "the case # (if applicable); the officer's name; whether the detention involved a frisk or pat-down search; an explanation of the basis for the detention; an explanation of the basis for any frisk or search; whether the contact was tape recorded; the name, race, and gender of all persons involved in the detention and/or frisk; whether the individual involved in the detention and/or frisk was arrested or cited, and if so, the charges; and the date, time, and location of the incident.  If the contact was tape recorded, the tape shall be retained for 14 days and may be destroyed thereafter unless a complaint has been received about the incident.

4.    For warrantless searches and seizures, the report will also include names and contact information for all witnesses when possible.

5.    For traffic stops during which no search occurs, the report may be a citation or warning form, or, if no citation or warning form is issued, the radio report of all data currently required, plus the reason for the traffic stop.  If a search occurs, the report described in paragraph 2 above must be completed.

6.    Each report described in paragraphs 2 and 3 above will be reviewed by Internal Affairs and the reporting officer's immediate supervisor

within 24 hours and expeditiously through the chain of command. (If there is no Internal Affairs officer on duty during the first 24 hours, Internal Affairs will review the report as soon as possible thereafter.) Whenever Internal Affairs or a supervisor determines that the officer's conduct reasonably indicates a possible violation of HPD policies or other inappropriate conduct, Internal Affairs will then conduct a proper investigation.

C.    Quarterly, on a cumulative basis, HPD senior staff will analyze and review these reports in order to strengthen HPD's ability to prevent improper detentions, searches, and seizures by all officers. As part of this analysis and review, senior staff will specifically:

1.    have compiled and review incidents by officer and by type of detention, search, or seizure used.

2.    Take remedial steps sufficient to ensure that officers are using appropriate methods during detentions, searches, and seizures. Such steps may include, but are not limited to, revision of policy or training generally or remedial instruction to assure that individual officers do not inappropriately make detentions, searches, and seizures in the future.

## VII.   REVIEW OF CERTAIN ARRESTS OR CHARGES

Within one month:

A.    HPD will review and clarify its policies and procedures and issue a memorandum to all officers informing them that it is a matter of officer

10

discretion, rather than mandatory, to arrest a person for operating while driving privileges are under suspension or revocation.

B.    HPD will implement procedures that ensure adherence to the following policy:        Except as provided below in this subsection, when a person is arrested for conduct which could be charged under a City ordinance or state law, all charges will be filed in Municipal Court.  When the person arrested is a City employee, when an enhanced penalty may be appropriate due to prior convictions, or when there are multiple charges and some of the charges are actionable only in Magistrate Court, all charges will be filed in Magistrate Court.

C.    HPD will revise its policies and procedures on detoxification arrests or detentions to require:

1.    the administration of a breath alcohol test on intake at the City Jail whenever a person is arrested or detained for being intoxicated by alcohol, unless the person refuses, resists, is violent or aggressive or is incapable of performing a breath test (it is intended that the administration of the test shall not jeopardize the safety of the prisoner, jailer or equipment);

2.    that approximately every two hours the jailer evaluate the person's state of intoxication and administer a breath alcohol test, unless the person refuses, is violent or aggressive or is incapable of performing a breath test, to determine whether a person may be released,

3.    the existence of probable cause (not some lesser standard) as to the

11

presence of the elements required by state law as the basis for detaining a person for being intoxicated,

4.   strict compliance with the requirements of state law concerning the permissible location and grounds for detaining or arresting a person for being intoxicated, including that a person may not be taken from his or her house for detoxification;

5.   training for officers on the revised policy and implementation of procedures sufficient to ensure compliance with that policy.

D.   HPD will adopt procedures for expeditious review by the reporting officer's immediate supervisor and through the chain of command of all reports of arrests for the following offenses:

1.   resisting, evading and/or obstructing a police officer;

2.   assault on an officer;

3.   possession of contraband or other illegal items (e.g., controlled substances, drug paraphernalia, weapons, etc.) discovered in warrantless searches not conducted pursuant to arrests for other offenses;

4.   disorderly conduct;

5.   insurance required;

6.   concealing identity; and

7.   public intoxication.

Where the charge is resisting, evading, obstructing and/or assaulting an officer, supervisors will also ensure that the use of force by the officer is

properly documented in the use-of-force section of the police report.

E.    HPD will develop policies and procedures directing supervisors to refer immediately to the Internal Affairs Officer for investigation all incidents where an arrest report or other documentation reasonably indicates a possible violation of HPD policies or other inappropriate conduct relating to the arrest, with a copy of this referral to the chain of command.

F.    HPD will develop procedures that require senior staff to analyze arrest and charging information on a quarterly, cumulative basis to detect trends in arrests and charging practices.  The analysis will include a review of arrests for the charges set forth above and other high incidence arrests.  HPD senior staff will use these data to ensure that officers bring only appropriate charges and are not violating other HPD policies or legal rules.

## VIII.   CITIZEN COMPLAINTS AND INTERNAL AFFAIRS

Within three months HPD will complete a comprehensive revision of its citizen complaint/internal affairs processes.  This revision will include the following:

A.    HPD will assign the responsibilities for the investigation of citizen complaints and Internal Investigations to a supervisory level "Internal Affairs Officer," who reports directly to the Chief of Police and who has direct access to the Chief of Police.  An additional supervisory officer(s) will be designated to assist the Internal Affairs Officer and serve as an alternate in the event that the Internal Affairs Officer is not available.  No supervisory officer may serve as an assistant on any investigation of any officer who is supervised by him

or her.

B.      HPD will review, revise and consolidate the existing "Supervisory Investigations" and "Internal Affairs Investigations" policies into one comprehensive policy in order to clarify and enhance procedures for these investigations.

C.      HPD will make this revised policy available for inspection and copying by the public, and locate copies for the public at police headquarters, city offices, and other appropriate locations.

D.      The revised policy will include, at a minimum, provisions for the following:

   1.      The qualifications, selection process, and tenure for the Internal Affairs Officer(s). Tenure will be restricted to no more than five years.

   2.      The Internal Affairs Officer will report on Internal Affairs functions directly to the Chief of Police. Except for the Chief of Police, the authority and responsibility for determining the disposition(as defined in section VIII(D)(5)(a) below) of an investigation should rest with the Internal Affairs Officer. The accused officers' supervisors will not have the authority to modify or reverse any disposition of any investigation.

   3.      Initiation of an IA investigation

      a.      The Internal Affairs Officer or those officers assigned to assist will be responsible for investigating all potential misconduct allegations. These include use of force, detention, search and seizure, and arrest referrals and the filing of tort claims.  There will be no discretion by the Internal Affairs Officer, assistants,

14

or any police officer to refuse to accept a complaint and failure to accept a complaint and/or any attempt to discourage a complainant from filing a complaint will be subject to severe disciplinary action.

b.     No citizen will be asked or allowed to waive his or her right to sue over police misconduct unless the citizen is represented by legal counsel and has consulted with counsel about such a waiver.

c.     Citizens will be allowed and encouraged to initiate a complaint against an officer, either in person or by telephone, mail, or facsimile transmission. Complainants will not be required to file a complaint "form" to initiate an investigation, although HPD will offer a form to complainants to assist them in relating useful information.  If a citizen voluntarily submits a complaint form, HPD may request that the citizen sign this form.  The complaint form will not contain any intimidating language relative to the truthfulness of the complaint or the possibility of legal action.

d.     A complainant will be allowed to file an anonymous verbal or written complaint. The department will accept and investigate complaints filed by individuals other than the alleged victim of misconduct (third-party complaints). The Internal Affairs Officer may ask anonymous and third party complainants for

15

corroborating evidence, but even if none is available or offered, the Internal Affairs Officer will investigate such complaints to the fullest extent possible to reasonably determine whether the complaint can be corroborated.

e.      HPD will require officers to report misconduct by other officers, which should be reported directly to the Internal Affairs Officer or through the reporting officer's chain of command, consistent with paragraph VIII(D)(4)(I), below.

f.      No complainant will be required to go to police headquarters to file a complaint or provide a statement. HPD will make complaint forms and pamphlets describing the complaint process available at several non-police locations around the City, so that complainants may initiate a complaint without coming to police headquarters.

g.      The Internal Affairs Officer will have a telephone number, with a 24-hour answering machine, so that a complainant need not call the main police number.

h.      The City of Hobbs will hold yearly open meetings to inform the public about various methods for filing citizen complaints against police officers. The Department will publish the telephone number of the Internal Affairs Officer and publicize the time and location of each meeting.

i.      The Internal Affairs Officer will notify the supervisors of an

16

accused officer whenever a citizen has filed a complaint against that officer, except in the unusual situation when the Chief of Police determines that it is necessary for the investigation that the supervisor not be informed. Such notifications shall not include disclosure of personal information related to the complainant and/or witnesses, unless required by the New Mexico Officer's Bill of Rights statute.

4.   Conducting the IA Investigation

a.   The Internal Affairs Officer will investigate or monitor the progress and completeness of all IA investigations. Supervisors are not authorized to conduct the IA investigation of complaints against officers for whom they have direct supervisory responsibility.

b.   The Internal Affairs Officer will not close any investigation without rendering a disposition. Withdrawal of a complaint or unavailability of a complainant to make a statement should not be a basis for closing an investigation or rendering a disposition of "unresolved" without further attempt at investigation. The Internal Affairs Officer will investigate such complaints to the fullest extent possible to reasonably determine whether the complaint can be corroborated.

c.   If complainants or witnesses are reluctant to come to police

headquarters, or are unavailable to be interviewed during business hours, the Internal Affairs Officer will offer to interview them at alternate sites, including at residences or places of business, and during reasonable weekend or after-business hours.  All such interviews will be arranged and conducted so as not to unnecessarily embarrass persons interviewed or result in unnecessary disclosure of confidential information to others, such as complainants' employers, co-workers, clients, customers, family, friends, or neighbors.  The Internal Affairs Officer will also provide reasonable notice before all complainant and citizen witness interviews.

d.   All interviews of complainants, involved officers, and witnesses will be tape-recorded.  These tapes will be kept as a permanent part of the Internal Affairs investigative file. If a complainant or witness refuses to be tape-recorded, the Internal Affairs Officer will accept a written narrative of the statement and request that it be signed by the complainant or witness.

e.   The Internal Affairs Officer will not conduct group interviews of officers and will not accept a "special report" or written statement from any officer in lieu of an interview. The Internal Affairs Officer will have the authority to question all involved persons and to challenge their version of the facts.

18

f.    In order to interview officers effectively, the Internal Affairs Officer will review the accused officer's and officer witnesses' complaint histories and have available for review the following additional information for these officers: activity history, performance evaluations, assignment history, and training/qualification records.

g.    All HPD officers will be obligated under penalty of discipline, to appear at the Internal Affairs Office for interviews and to answer questions.  Officers who are the subject of an Internal Affairs Investigation should be informed of their rights and obligations under *Garrity v. New Jersey*, 385 U.S. 493 (1967), and applicable laws.

h.    Supervisors on the scene of incidents that result in an Internal Affairs investigation will also be interviewed. Supervisors should be required to detail their handling of the situation during and after the alleged incident and their observations of the complainant (if any) and officers.

i.    The Internal Affairs Officer or assistants will canvass the scene of an incident for witnesses as soon as possible after receiving a complaint of misconduct or any other referral.  Where possible, the Internal Affairs Officer or assistants will canvass incident scenes at the same time of day and/or day of the week on which the incident complained of occurred.

19

j.    The Internal Affairs Officer or assistants will collect all appropriate evidence (except what cannot be obtained from an uncooperative complainant or other witness) to document each incident of potential misconduct, or any injury of a complainant, including but not limited to photographs of injuries and medical records (by requesting a medical record release and/or the assistance of the injured person to obtain the medical records). The Internal Affairs Officer or assistants may request, but will not require complainants or other witnesses to provide evidence that the Internal Affairs Officer or assistants can otherwise obtain for themselves.

k.    The Internal Affairs Officer will assess the propriety of all officer conduct during an incident that is investigated.  If, during the course of an investigation, the Internal Affairs Officer has reason to believe that misconduct other than that alleged by a complainant (or indicated by a triggering report) has occurred, he or she will investigate and make findings with respect to such misconduct.

l.    On the basis of a preliminary investigation, the Internal Affairs Officer is authorized to refer for investigation and action through the chain of command, rather than through the process set forth in subparagraphs (a)-(k), above, those complaints that  are of a minor nature, such as complaints that

concern an officer driving a motor vehicle in an unsafe or illegal manner, or conducting him or herself in a rude manner or taking too much time at lunch. The Internal Affairs Officer shall not refer any such complaint to the chain of command, however, if there is any reason to believe that the officer's conduct was racially discriminatory in any way. Whenever such a referral is made, the Internal Affairs Officer shall provide the chain of command a written explanation for the referral and the complainant shall receive a written response from the chain of command.

5.    Evaluating the Complaint

a.    At the conclusion of the investigation, the Internal Affairs officer will give the investigative file to the Chief of Police after having made one of the following dispositions:

- o    Sustained: Evidence sufficient to prove allegations.

- o    Sustained as to misconduct not based upon the complaint: Where misconduct not alleged in the complaint is substantiated.

- o    Not resolved: Insufficient evidence to either prove or disprove allegations.

- o    Unfounded: Allegation is false or not factual or the employee was not involved.

- o    Exonerated: incident occurred but was lawful.

- o    Policy & Procedure: The investigation revealed that the complaint in effect dealt solely with an objection or criticism against an agency policy or procedure and not against an individual officer. In this case the Chief of

Police or his designee shall have a written report prepared that describes the review taken of the appropriateness of the policy or procedure at issue and explains the reasons why any change in that policy or procedure was or was not made. A copy of this report shall be provided to the complainant as part of the Department's response to the complaint.

b.      There will be no automatic preference of an officer's statement over a complainant's statement.   In making credibility determinations, the Internal Affairs Officer should consider the officer's history of complaints (including those with dispositions other than "sustained"), disciplinary records, and the complainant's criminal history for crimes involving untruthfulness. Any credibility determinations should be explained fully in writing.

c.      At the conclusion of each investigation, the Internal Affairs Officer will issue a report describing the alleged misconduct, and other misconduct identified during the course of the investigation, a summary of all evidence gathered during the investigation (including an explanation for any absence of evidence), documentation of all credibility determinations, the accused officer's complaint history, the findings with respect to all potential misconduct, and the analysis supporting the findings.

d.      The report will include the disposition of the investigation, which should be part of the investigation file. The Internal

Affairs Officer should not recommend discipline nor be part of disciplinary decisions relating to the disposition and findings.

e.     Except in the case of an especially complex or time-consuming investigation -- where the particulars should be explained in detail -- the Internal Affairs Officer will complete the investigation and report within 30 days of receipt of the complaint or referral.

f.     The Internal Affairs Officer will provide the completed report to the Chief of Police, who will evaluate the investigation, recommend additional investigative steps, or approve the investigation.

g.     If the Chief or any senior staff with whom he consults do not agree with the disposition, they will not attempt to influence the findings of the Internal Affairs Officer, but will detail his or her rationale, in writing, and render express findings and a final disposition.

h.     Department discipline and order is the responsibility of the Chief of Police. Therefore, no further HPD review of internal affairs investigations will be necessary.

6.     <u>Management and Public Oversight</u>

a.     Every complaint or other referral received for Internal Affairs investigations will be assigned a control number.

b.     In addition to preparing and maintaining investigation files, the

Internal Affairs Officer will maintain summary records that include the Internal Affairs control number, the names of all involved officers, contact information for all officers and complainants, a narrative description of the allegations, significant dates, the street address of the incident, and the disposition of the complaint.

c.   The IA final report and summary of evidence will be maintained for at least ten years from the date of the disposition of the complaint and the actual investigation files will be maintained for at least eight years.  Internal Affairs information should be maintained in a readily accessible manner during that officer's employment with HPD and for at least three years after the officer leaves the department.  Data regarding an officer who has left HPD should be archived for 55 years, subject to schedules for destruction of documents approved by the State of New Mexico.  Internal Affairs files and records relating to a particular officer, upon request to and approval by the Chief or his designee, should be available to personnel within that officer's chain of command who are responsible for that officer's training, supervision, or discipline.

d.   Once a complaint is finally resolved by the Chief of Police, the Chief or his designee will inform the complainant of the resolution, in writing, including the investigation's significant

dates, general allegations, disposition, and any resulting supervisory steps or discipline.

e.     The Internal Affairs Officer will prepare a twice-yearly public report of all investigations conducted. Such reports will include each investigation's significant dates, general allegations, disposition, and any resulting supervisory steps or discipline.

f.     At least quarterly, the Chief of Police or his designee will review complaints of police misconduct to gauge the effectiveness of HPD policies and training and to determine the need for new or further training, revisions of policies and procedures or other management action.

7.     <u>Supervision of Officers</u>

a.     At the conclusion of an Internal Affairs investigation, and after the disposition has been made, the Chief of Police will decide an appropriate supervisory and/or disciplinary response.

b.     At the close of every Internal Affairs investigation (whatever its disposition), the Chief will evaluate the need for non-disciplinary supervisory steps, including remedial training, counseling, and assignment to a field-training officer, transfer, or reassignment. The Chief's decision will be in writing and become part of the personnel file of the involved officer(s).

c.     Whenever the disposition of an Internal Affairs investigation is "sustained," the Chief will either recommend to the City

Manager appropriate discipline, impose the discipline himself or impose appropriate supervision and require the officer to receive remedial training and counseling, in addition to whatever other steps are taken.

d.      In deciding the appropriate discipline for each officer who is the subject of a "sustained" disposition, the Chief should consider an officer's complaint history and the immediate misconduct, consistent with the City's discipline policy and state law.  Prior remedial training counseling, discipline, transfer, or reassignment for allegations of related misconduct should also be considered in assessing the severity of the discipline imposed.  Anonymous complaints, determined to be "not resolved," "unfounded," "exonerated" or "policy and procedure" after investigation by an Internal Affairs Officer, should not be the basis of discipline of any officer.

e.      The Internal Affairs Officer will identify for review, by the Chief and designated supervisors, all officers with three or more complaints of misconduct or other Internal Affairs referrals in three years, whether or not the disposition of the investigation was "sustained," except that anonymous complaints determined to be "not resolved," "unfounded," "exonerated" or "policy and procedure" should not be counted.  These reviews should result in supervisory meetings with the officer,

26

retraining, counseling, assignment to a field-training officer, transfer, and/or reassignment, as appropriate at the discretion of the Chief.

IX.   **TRAINING**

A.   HPD will continue to maintain an appropriately trained supervisor as the full-time "Training Officer" and develop a written policy requiring that the Training Officer have the following responsibilities:

1.   Review and, if not already included, revise the in-service training program to include the topics set forth above at III(A), IV, V, VI, VII and VIII.

2.   Ensure administration of a training program for every member of HPD who is promoted, to be given to the officer at the start of the promoted officer's tenure in his or her new rank.

3.   Ensure administration of annual supervisory and leadership training, which will be mandatory for all supervisors, and should include command accountability, integrity, and cultural diversity issues.

4.   Ensure that every officer is trained frequently in policies and procedures, including use of force and use-of-force reporting; search and seizure and search and seizure reporting; *Terry* detentions (including the different evidence required at **each** of the two distinct phases: the detention and then any pat down that might occur); and citizen complaint procedures.  In addition, each time there is a

decision by a New Mexico appellate court reversing or criticizing conduct of HPD officers, that decision will be followed and used to train HPD officers as to lawful police conduct.

5.      Supervise the training instructors and coordinate with the Lieutenant over the field officer trainers regarding the FTO training provided to HPD officers.

6.      Meet at least quarterly with the Chief of Police or his designee to review complaints of police misconduct to gauge the effectiveness of HPD policies and training and to detect the need for new or further training.

7.      The Lieutenant over the Field Training Officer shall engage in the foregoing, as applicable, with regard to field training and coordinate FTO training with the Training Officer to ensure implementation of the training requirements of this Stipulated Agreement.

B.      In addition to the training described in section IX(A), above, both entry-level and annual in-service training will cover the following areas to be set out in the training policy:

1.      *Cultural Diversity*.  Continue this training by qualified instructors, and insure that it includes at a minimum, training on racial profiling, racial targeting, police interactions with persons from different racial, ethnic, and religious groups, and persons of the opposite sex.  In addition, the program should include training in communications skills and avoiding improper racial, ethnic, and sexual communications.

2.    *Use of Force*.   Uses of force, including verbal de-escalation techniques, as an alternative to the use of force and other tactics for avoidance of confrontation should be emphasized. Such training also should cover the proper application of various types of force, as well as examples of situations that do not require the use of force but may be mishandled, resulting in force being used (for example, individuals verbally challenging an officer's authority or asking for an officer's identifying information).

3.    *Integrity and Ethics*. This training shall cover the duties of truthfulness and reporting misconduct by fellow officers, the importance of avoiding misconduct, professionalism, and the duty to cooperate in misconduct investigations.

C.    HPD officers will receive, at a minimum, 40 hours of in-service training annually, and the in-service training will continue to include annual sessions on search and seizure law and methods, and other relevant legal developments.

D.    Within one month HPD will establish formal eligibility criteria for training instructors and Field Training Officers.  Officers with disciplinary records or three sustained complaints over the prior three years for constitutionally significant issues, including but not limited to, race discrimination, sexual harassment, excessive force, unlawful searches, seizures, filing false charges, should be disqualified as instructors and FTOs, until two years have elapsed without such discipline or complaints in any areas in which they

conduct training.

E.     All training instructors and field training officers will receive adequate training
       to enable them to carry out their duties.  Training instructors and field training
       officers will be required to maintain, and demonstrate on a regular basis,
       their proficiency in their areas of instruction through annual evaluations.

F.     HPD will continue to maintain appropriate records documenting all training
       of officers.

G.     The Lieutenant over the Field Training Officer shall engage in the foregoing,
       as applicable, with regard to field training.


## X.     INFORMATION SYSTEM

In addition to the various analyses required above, HPD senior officers will conduct
systematic analyses on a quarterly basis for each officer to detect trends in potential racial
bias with the goal of eliminating actions that reflect racial bias.  This analysis should include
a review for each officer of:  1) statistics by race in uses of force, field contacts, other
detentions, searches and seizures, and citizen's complaints,  2) the use of racial epithets
and 3) other indicators of possible racial bias.  If these data show disparate racial impact,
use of racial epithets or improper conduct, HPD will immediately refer the data to the IA
Officer for investigation and subsequent remedial/disciplinary action by the Chief of Police
or the City Manager, as appropriate.

## XI.  IMPLEMENTATION

A.  Within ten days of agreement on this Stipulated Agreement, HPD will engage the services of Clarence Chapman as the independent monitor/mediator for a period of three years.  The independent monitor/mediator shall:

1.  Receive, review, comment on and make recommendations concerning drafts of all new and/or revised policies, practices and regulations required by this Stipulated Agreement,  .

2.  Receive, review, comment on and make recommendations concerning arrests, detentions, searches and seizures, and racial bias on the basis of statistics, analyses and documents provided in connection with the implementation of this Stipulated Agreement,

3.  Review, comment on and make recommendations concerning citizen's complaints and investigations thereon,

4.  Review, comment on and make recommendations concerning training in the areas covered by this Stipulated Agreement,

5.  Assess progress; mediate differences between the parties about implementation of this Stipulated Agreement and file periodic reports, and

6.  Provide Plaintiffs' designee with copies of all letters, recommendations, etc. made in this case.

B.  HPD will promptly (i.e., within seven days of completion) provide the independent monitor/mediator and the Plaintiffs' designee with copies of the analyses, reports and criteria required by Section V(H) (use of force

31

analyses), Section VI(C) (detentions, searches and seizures), Section VII(F) (analyses of arrests), Section VIII(D)(6)(b) and (e) (citizen complaint summaries and public reports), Section IX (training), Section X (racial analyses) and with all other material and access to staff of HPD necessary to review and analyze any policies, practices, regulations, reports, complaints, or other data reasonably necessary to review compliance with this Stipulated Agreement.

C.  HPD will provide Plaintiffs' designee with copies of all new and amended or revised policies, regulations and memos to officers required by this Stipulated Agreement as soon as they are adopted by the HPD.

D.  Plaintiffs will promptly provide HPD with the identity of a designee to receive any information requested by Plaintiffs in accordance with this Stipulated Agreement.

E.  HPD will provide Plaintiffs' designee with any information reasonably requested regarding compliance with this Stipulated Agreement.

F.  Should any issue arise as to the compliance with this Stipulated Agreement, the parties shall first attempt to mediate any differences before applying to the Court for relief.

G.  Unless extended by the Court, the term of this Stipulated Agreement shall be three years.  Defendant City of Hobbs will contract with the independent monitor/mediator for up to $20,000 of services for each year, as determined solely by the independent monitor/mediator to be necessary to carry out the duties set forth in this Stipulated Agreement.

32

## XII.   INJUNCTIVE RELIEF FOR THE NAMED PLAINTIFFS

A.    HPD agrees that for a period of three years after the entry of this Stipulated

Agreement:

1.    Plaintiffs will not have their homes, vehicles or persons searched on

the basis of consent without a written, signed consent form or a tape

recording of their oral consent, which tape must be maintained for 60

days from the search.  Except as provided in subparagraph 2, below,

in the absence of probable cause or exigent circumstances, the HPD

will not seek to search any of the named Plaintiffs or their property.

2.    Plaintiffs will not be subjected to a *Terry* detention unless the officer

has a reasonable, articulable suspicion that the Plaintiff has

committed or is about to commit a crime.

3.    Plaintiffs will not be subjected to a "pat down" during a lawful *Terry*

detention unless the officer has a reasonable, articulable suspicion

that the Plaintiff is armed at the time of the detention.

4.    Guns will not be drawn and pointed at any Plaintiff except in the

extremely rare and exceptional situation when, on the basis of the

observed conduct of the Plaintiff, the officer would be constitutionally

permitted to use this degree of force against the Plaintiff under the

totality of circumstances.

5.    No HPD officer will question any Plaintiff about any matter (other than

a lawful *Terry* detention or an investigation of a domestic dispute

involving a Plaintiff), if the Plaintiff informs the officer that he or she

33

was a Plaintiff in this case and that he or she wants to contact counsel for Plaintiffs.  Counsel will then arrange with HPD for an interview at another time, as appropriate.

6.  Upon request, counsel for Plaintiffs will be provided with all police reports, witness statements, video tapes and audio tapes concerning any and all contacts with each Plaintiff within 10 days after the document or tape is requested.

7.  Plaintiffs may, but are not required to, invoke these provisions at their discretion, by identifying themselves to any officer as a plaintiff subject to this Stipulated Agreement.

B.  HPD will:

1.  permanently eliminate from its current records, including its computer records, any and all references to Plaintiff Ward as "mental" or dangerous or that caution should be used for officer safety in contacts made with Plaintiff Ward or that Plaintiff has been uncooperative when, in fact, he has been cooperative.

2.  cooperate with Plaintiffs' counsel in their efforts to obtain municipal/magistrate court approval to expunge all records of the arrest of Plaintiff Rosslee Mackey on July 22, 1998 for his failure to appear on a traffic citation.

**AGREED:**

**For Plaintiffs:**

_____        _____
Richard Rosenstock                                       Date
PO Box 10230
Santa Fe, NM 87504-6230
(505) 988-5324


_____        _____
Daniel Yohalem                                              Date
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 983-9433


_____        _____
Debra Poulin                                                  Date
612 Old Santa Fe Trail
Santa Fe, NM 87501
(505) 995-0360

Attorneys for Plaintiffs


**For Defendants:**

_____        _____
Tony Knott, Chief of Police                            Date


_____        _____
Bo Thomas, Hobbs City Manager                   Date


_____        _____
Gregory L. Biehler, Esq.                                 Date
6715 Academy Rd. NE
Albuquerque, NM 87109
828-3600   FAX 828-3900

Attorney for Defendants

**APPROVED:**

_____
United States District Judge